Steve Tanigia, attorney for the petitioner Anastacio Silva-Nunez. I would like to reserve two minutes for rebuttal. The BIA and the IJ erred as a matter of law in the finding that the petitioner's application for asylum was time-barred and not subject to an exception of the filing deadline. The IJ found that the Mr. Borman, the country expert, and Mrs. Allender, the petitioner's wife, all credible at AR 48. An applicant for asylum must be filed. Your client made inconsistent statements, right? I'm sorry? Your client made inconsistent statements about his reasons. What am I getting the case? He made inconsistent statements? I don't believe they were inconsistent. I think they were consistent given the fact that he also had PTSD, all found to be credible by the IJ. He made different statements? Different statements at different times. Right. That's what people do. They don't usually make two statements at the same time. Exactly. See, when they make different statements, yeah. Exactly. That's how time works, you know. Yeah, so it was one point he says, I didn't know about this. Yes. And then another point he said, I had PTSD. And the IJ decided to believe his first statement, I didn't know. That's not a good explanation. Correct. But when he said, I didn't know, that was at the point where he had no clue about his mental disability or disorder. That was way at the very beginning. Until he's talked to a lawyer and figured out that was the wrong thing to say. Well, it was after he was evaluated by professional, clinically evaluated by professional experts and had confirmation. Anybody could say, oh yeah, I have PTSD, but that doesn't mean that they actually have it. Well, it's entirely possible that both statements are true. He didn't know, and because he had PTSD, he was disabled in various ways from making investigations and so on. On the other hand, I have to say that I'm not sure we get to review any fact-finding by the IJ on the question that goes to whether or not the time bar applies. So speaking only for myself, we have not consulted as a panel, I think he's probably time-barred and we can't do anything about it. I'm much more interested in whether or not we've got a protected ground here. I think you better go to that. Protected ground? Yeah. Yeah, you haven't got much time, so I think you better go to the meat and coconut. So for the other area, the BIA and IJ erred as a matter of law, finding that the social group people who expressed their opposition to the drug cartel members were not cognizable under the act. Now, coupled with facts, other factors such as the people... I think you're still missing the target. Okay. Well, the issue is whether or not we've got a cognizable social group, and he claims that there's a cognizable social group and therefore protected because he has opposed the gang and he's objected to getting me into the entry. It's also true as a matter of fact that he's not just anybody who's objecting to going into a gang. He's a returning American who is shown or known to have money familiarity with the United States. And in fact, as soon as he comes back, his friend, I say it in quotation marks, Miguel, sets him up. Exactly. So how am I supposed to define the social group? Merely someone who opposes gangs or someone coming back from the United States who opposes gangs? Well, I would say it would be coupled with all of these other factors. I was trying to mention that he spoke English. He lived in the United States. He was familiar with the U.S. customs and the way of living here. And he was a recent return to his hometown. So he was easily identifiable as a new person, especially he was driving a friend's truck with a different license plate. So automatically people were questioning him and it was a small town. Now, did the social group definition that you advance narrow it to someone not only who's opposing gangs, but also someone who's coming back from the United States? Or did you just say anyone who opposes gangs and does so openly? I don't think we briefed it this detailed, but all of this information was in the record. Um, so I'm just trying to, uh, flush it out, uh, for the arguments. Um, and also these people were recognized, not only by the answer to just Fletcher's question, you did not propose the group as being limited to the people who are turning to the United States. Yes. That's the answer to the question. Exactly. I guess I could have made the argument, the facts are there, but you didn't make the argument. Exactly. I'm making it now, but, um, also the gangs did recognize, uh, this particular group as well as, uh, general public. So much so that there is a familiar term used to describe these types of people, uh, as said by the country experts testimony under AR 208, which the term is POCHOS. So there was already a familiarity by the general public that has an actual word for people fitting into this the social group that I just mentioned. Um, also the BIA and the IJ error doesn't matter a lot in denying the petition or the protection under the convention. So these are people who oppose the gangs or people who are turning to the United States who oppose the gangs? All, all inclusive of all of the factors I had mentioned. And that would make it... No, I give you a choice of two things. And instead of picking one of those two things, you could be something else, which doesn't tell me which one of the two things it is. Is it the larger group, everybody opposing gangs or just people coming back from the United States opposing gangs? It's one or the other. I gave you a choice. Is it one or the other? I would say it would be the latter coupled with the other factors I had mentioned about speaking English. The latter being people coming back from the United States opposing gangs? Yes. Poachers are people coming back from the United States opposing gangs? Yes. And where is that on the record? I'm sorry? Where is that? Um, it's throughout the record. I don't have a specific... You have the record there? Yes. Maybe you can sit down and you find me a reference and give us a bottle. Okay. Thank you. May it please the court, Matthew George for the Attorney General. Petitioner first defined his social group, page 301 of the record, as people who express their opposition to the drug cartel members. He's consistently used that definition for his social group and never expanded it or narrowed it to the specific facts that the court has brought up today. To the extent he's trying to now narrow it or alter it, it's unexhausted and the court would lack jurisdiction to review that social group other than the one that he's defined before the agency consistently, both to the immigration judge, to the board, and also in his brief to the court. That social group is not cognizable. It's not socially distinct. Now, when you say that social group, are you referring to the social group he explicitly argued or the social group that I just suggested to him? The one that he proposed to the agency and has consistently advanced, at least until today, Your Honor. Well, I understand your argument that you didn't make the argument, but what if he had made the argument? Is a social group that is defined as returning from the United States, that is to say people who are pochos, who also openly oppose recruitment by gangs, would that be a sufficiently visible and discreet group? That I can't answer, Your Honor. That would be a question for the agency to resolve based on whatever factual record was before it. Well, should we remanded the agency to ask him the question? No. Petitioner has never raised the social group that is now coming up today. Well, he was encouraged to do so, I confess. He just raised it. If that's something he wishes to pursue, the motion to reopen would be an excellent platform to do that if that's something he now believes he has eligibility for. However, on the record that he has submitted and the social group he submitted, it's not cognizable. Evaluating the cognizability of a different group, the one the court has brought up today, that would depend on a number of different factors. There could be new facts that might need to be proven. Perhaps he could prove that it's socially distinct. Perhaps he could prove it's particular. But that was not the question that was before the agency. And that's why the statute and the court's precedent would say it's unexhausted and the court can't review it because that is a very factually intensive question. But the group that he did raise is not cognizable. It's not particular. It's not socially distinct. On the social distinction question, petitioner provided no evidence that Mexican society perceives, considers, or recognizes his group as a group. He only provided evidence of the persecutor's perspective, which the board has said was not sufficient. It needs more evidence. So hypothetically, if we would disagree with you, find that there was a social group, whether you call it pochos or whatever, how about the last aspect of this, whether there was acquiescence by the Mexican government? And do you think the BIA and the IJ were correct? It seems to me that they just focused on national efforts and not local efforts. I'm concerned about that dichotomy and whether you agree or disagree with the BIA's decision in that respect. Specifically on the acquiescence issue, the board did focus a little bit more on national efforts rather than specific. You think that was incorrect? I believe what the board said is sufficient. And I'd also like to point out that the CAT inquiry is two parts, as the court has set out in cases such as Garcia-Millian. It's not just acquiescence is not the be-all and end-all. There's also the likelihood of torture aspect. So even if the board, say, entirely screwed it up and erred in the acquiescence portion, Mr. Silva still needs to prove a likelihood of torture, which he has not done. What do you think the current standard is on the Ninth Circuit law? I'm sort of a visitor here in terms of the acquiescence issue. What is the current standard that you think is applicable? For acquiescence, Your Honor? Yeah. Whether a public official has acquiesced. Torture must be at the instigation over with the consent or acquiescence of a public official or other person acting in an official capacity. That seems to be something where we can consider local officials as well as national officials, right? Yes, Your Honor. So we can look at the focused local scene here. And I don't see in the record where there's been any determination as to whether or not there's acquiescence here by local officials. Am I missing something? I think the court's reading of it, Your Honor, is correct. The board here focused a little more on the national efforts. However, that's only a part of the inquiry. The likelihood of torture is also part of the inquiry. And there, the agency correctly set out the standard, correctly applied the factors. And it was correctly applied. I've got a problem with that. I'm reading from the BIA. I'm on page four of its order, AR06. BIA writes, we see no clear error in the IJ's finding that the respondent did not show he will be identified as anti-gang in Mexico and targeted by the same cartel members who harmed him. We see no clear error in the IJ's finding that the respondent's fear was of generalized violence, not particular to him. Well, I'm looking at page 18 of the IJ's order, which is AR57. The IJ writes, respondent failed to identify anyone in Mexico who would want to harm him or know that he was asked to join the gang. Accepted, but then fled the country. Well, that's wrong. His, quote, friend Miguel set him up. His friend Miguel knows exactly what happened. And his friend Miguel is right there when he comes back from the United States to inform the gang that here he is again. So that's just wrong. Well, that's a... It's a fact and it's wrong. It's an inference that's being drawn based on historical facts. It's a statement that's wrong. The statement is, respondent failed to identify anyone in Mexico who would know that he was asked to join a gang. Accepted, but then fled the country. Miguel knows that. He identified him. The story's right there in front of the IJ. It's just wrong. I don't know if Miguel necessarily knows that he refused, that he fled, that the gang considers him in all of this. He testifies that after this happens, he comes back and tells Miguel. So it's wrong. So what do we do with that? What I think the board is getting at is the overall likelihood of torture, the knowledge of someone today regarding the refusal, regarding the intent to harm him. You know, I just don't get that. The BIA says we still need no clear error in the IJ's finding, yet to me the error is not only clear, it just jumps out at you. So what do we do with that? It seems to me that there may be a very clear likelihood that he's going to be subjected to torture, given that Miguel is there. Miguel was pressured into setting him up the first time. I rather suspect this may happen again. I think there's a sufficient likelihood. So now what? Well, first of all, it's not just whether the court thinks evaluating it in the first instance, it's whether the record compels. And then there's also the other factors. Well, the record compels my conclusion that the IJ made a mistake and the BIA didn't pick it up. Do we send it back and say, hey, you made a mistake, go back and look at it again? No, because the board looked at other factors in addition to that one regarding the likelihood of torture. Other factors, namely? That petitioner did not report this gang activity to the cartel activity to the police. That cartel members have not contacted his family. That his family's not been harmed. His brother, sister and mother still live in Jalisco without incident. And also that he could relocate. They did make a relocation determination, did they? Not that he was capable of relocating to another part of Mexico, correct? Yes, Your Honor. I guess he had the skills to be able to do that. And was there a four-year interregnum between this experience that he had in Mexico and his seeking to not return? I think it's a four-year interregnum, if I recall correctly. I know the incidents, he left in 2008. I don't have in front of me. And his family's still there. They have not been harmed during that period of time. That's correct. And petitioner's expert testified that that's something the cartels would do. If they felt he was somehow refusing them or had angered them or whatever. I don't think he testified they would. He testified they sometimes do. Right. Yeah, that's different from would. But that's certainly a factor that the agency can look at. I understand that, but you're overstating the testimony. But that's something that the agency has pointed out as a factor in this case. And the record supports it. No, I get that. Well, the notion of relocation, it seems to me, may be infected by the IJ's mistake and the BIA's failure to pick it up. I mean, you can relocate easily or less easily, depending on what danger you're in and where it's coming from. And they clearly didn't understand the danger, given that Miguel is right there to rat on him. What do I do with that aspect, then, of the relocation analysis? Well, the relocation, I don't think, was tied to that specific fact. The board certainly looked at the fact that petitioner is young, he's healthy, he's fluent in Spanish, he has training and work experience, and looked at other areas in Mexico, particularly Mexico City, where cartels' influence was much lower. And then found, analyzing all of that, including all the other factors, not just the relocation finding, looking at it holistically, found that petitioner failed to meet his burden. And so what the court would have to do is say, looking at all that holistically, this record compels a contrary conclusion, compels that he does have a likelihood of torture. So even if one particular fact maybe isn't that firm, that doesn't compel a contrary finding. No, not maybe is not that firm, is wrong. Yes, Your Honor. Because the agency looked at other factors. I see I'm out of time. Okay, thank you. Thank you for your patience, Your Honor. I found the information on AR-208 under Dr. Borner's testimony. He explains here that newcomers, people returning to areas of their hometown are easily recognizable by the locals. And they're also questioned into where they are, who they're going to. The question was, you said there's a term called poachers, right? Yes, it's also right here at the very end of his statement. And the specific thing you said it means is somebody returning from the United States who opposes the drug cartel. Yes. And that's what I didn't see. So point out where it says people returning from the United States who oppose the drug cartel. Um, well, I mean, it doesn't really say that they oppose it. It says that they're identifiable by returning. Lots of people return. Yes. Not all of them oppose the drug cartel. Some may be neutral. Some may have may support drug cartel. So we don't know. I mean, so the question is, your argument was, this must be a social group because it even has a name. Okay, but the name doesn't apply to particular social groups that Judge Fletcher suggested to you and you adopted so readily. Yes. It applies to every, poachers applies to everybody who comes back from the United States. Correct. Right, which is a lot of people. Correct. And then I was just trying to fine tune that. The name doesn't really support your argument. That's what I'm saying. Not, not the. At least the thing you've pointed out to me in the record here. Yeah, that is correct. You think there's someplace else where the word poachers is defined more narrowly like as you. Well, not in the record, but I would say poachers. If it's not on the record, I don't think it helps you any. Okay. No, no, the suggestion I made to you, and it's quite clearly what Judge Kaczynski is picking up on, is that the social group might be defined as poachers who oppose gangs, not poachers, because the term poachers does not, is not narrow. It is whoever comes back from the United States. Thank you. So if anything, it cuts against you. There is sort of a name for another group, which is not your group. It's a much larger group. True, but it is a group that is recognizable. And we could just. The group that's recognizable people who come back from the United States that oppose gangs. And they're going to a small hometown that everybody knows each other. And then you can tack on the other factors such as. Whose name is Sylvia Nunez. I mean, if you define it narrowly enough, I think. Yes, but I mean, in his testimony, he did say he was opposing gangs, but going back to. Well, yeah, there's no doubt. I mean, it's clear that he does. The question is whether that defines a social group. I mean, that's, you know, you. Yes. I have a few minutes left. No, I think you're out of time. Oh, may I just finish this one last statement quickly? I just wanted to point out that the IJ also incorrectly stated the fact that the petitioner failed to ID anyone that wanted to harm him. But he actually did in his testimony at AR 142 when he said two men. One of them, he named Diablo. So he had actually had the name of that person. So that was also a contradiction of the testimony and the judge. And where is this? AR 142. OK, thank you. Thank you so much. Thank you.
judges: Kozinski, W. Fletcher, Block